IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SHIRLEY COTTON, as Administratrix of**                                                                 **PLAINTIFF**
**the Estate of Ida Roberson (deceased), and**
**on behalf of her heirs and wrongful death**
**beneficiaries**

**V.**                                                                                   **NO. 3:13-CV-00169-DMB-SAA**

**GGNSC BATESVILLE, LLC, d/b/a**
**Golden Living Center Batesville; GGNSC**
**ADMINISTRATIVE SERVICES, LLC;**
**GOLDEN LIVING; and GOLDEN**
**LIVING-CENTER**                                                                    **DEFENDANTS**

## ORDER DENYING MOTION TO DISMISS
## PROCEEDING AND TO COMPEL ARBITRATION

      This is a wrongful death action originally brought in the Circuit Court of Panola County by Plaintiff Shirley Cotton against various entities associated with Golden Living Center Batesville, the nursing facility at which her deceased mother, Ida Roberson, received treatment in April and May 2011. Plaintiff alleges that Golden Living Center Batesville provided substandard care that proximately caused her mother's death. The case was removed to this Court on the basis of diversity jurisdiction.[1] Doc. #1 at 2. This matter is before the Court on Defendants' Motion to Dismiss Proceeding and to Compel Arbitration, Doc. #13, and on Defendant's Motion for Reconsideration, Doc. #30.

---

[1] The action was removed by Defendants GGNSC Batesville, LLC, and GGNSC Administrative Services, LLC, who represented that the remaining named defendants do not exist. Doc. #1 at 1 n.1. Plaintiff has not challenged this assertion. Accordingly, this Court will operate under the assumption that Defendants GGNSC Batesville, LLC, and GGNSC Administrative Services, LLC, are the only defendants in this matter.

# I.
# Applicable Law

Defendants have moved to dismiss this matter and to compel arbitration based on an arbitration agreement executed by Plaintiff, purportedly on behalf of her mother. Doc. #14. "A two-step analysis is applied to determine whether a party may be compelled to arbitrate. First, [the court] ask[s] if the party agreed to arbitrate the dispute. If so, [the court] then ask[s] if any federal statute or policy renders the claims nonarbitratable." *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (internal citations omitted). Here, neither party argues that arbitration is barred by a federal statute or policy. Accordingly, resolution of Defendants' motion to compel hinges on whether the parties agreed to arbitrate the dispute. *Id.*

In order to determine whether parties agreed to arbitrate a dispute, the court must answer two questions: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." *Sherer*, 548 F.3d at 381. These questions, in turn, are answered by applying relevant state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter … courts generally … should apply ordinary state-law principles that govern the formation of contracts."); *see also Cook v. GGNSC Ripley, LLC*, 786 F.Supp.2d 1166, 1169 (N.D. Miss. 2011) (citing *Kaplan*, 514 U.S. at 943). The required elements must be proven by a preponderance of the evidence by the party seeking to compel arbitration. *Grant v. Houser*, 469 Fed.App'x 310, 315 (5th Cir. 2012) (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 156 Fed.App'x 710, 712 (5th Cir. 2005)).

# II.
## Relevant Evidence

In support of their motion, Defendants submitted an "Admission Agreement" providing for the medical care of Ida Roberson at the Golden Living Center. Doc. #23-2. The Admission Agreement, which was dated April 19, 2011, listed Golden Living Center and Ida Robertson as the sole parties to the agreement. *Id*. The document was signed by Plaintiff as the "person duly authorized by Resident or by law to execute this Admission Agreement." *Id.* at 10. The first page of the Admission Agreement contains a Table of Contents which lists "Alternative Dispute Resolution Agreement" as an included document. *Id.* at 1.

Defendants have also submitted an undated Alternative Dispute Resolution Agreement between "Golden Living Center" and Ida Roberson ("ADR Agreement") signed by Plaintiff as the "Agent" of her mother. Doc. #23-1 at 5. The ADR Agreement provides that "[t]he parties agree that any disputes covered by this Agreement ('Covered Disputes') that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." *Id.* at 1. The ADR Agreement defined "covered disputes" as "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law …." *Id.* at 2. Pursuant to its terms, the ADR Agreement was "not a condition of admission to or continued residence in [Golden Living]." *Id.* at 1 (emphasis omitted).

Plaintiff does not dispute that she signed the Admission Agreement or ADR Agreement. She contends, however, that she lacked power of attorney with regard to her mother. Doc. #20 at 4. In support of this argument, Plaintiff has submitted a February 15, 2011, General Power of Attorney bearing Ida Roberson's name and purporting to give Power of Attorney to "Shirley

Cotton and Annie Reed." Doc. #20-2.  Although notarized, the document lacks the signature of Ms. Roberson and of a witness. *Id*.

Finally, Defendants have submitted an affidavit from Daphne Rodgers, the notary of the General Power of Attorney document. Doc. #24-5. In her affidavit, Ms. Rodgers avers that at the time the document was notarized, Ida Roberson telephonically "indicated that she wished to designate Ms. Cotton and Ms. Reed as her Attorneys in Fact, as her voluntary act."[2] *Id*. at ¶ 4.

### III.
### Motion to Dismiss Analysis

As explained above, the sole question to be decided is whether the parties agreed to arbitrate the dispute. *Sherer*, 548 F.3d at 381. In this regard, as the party seeking to enforce an arbitration agreement, Defendants must prove, by a preponderance of the evidence, that "(1) there [is] a valid agreement to arbitrate the claims and (2) … the dispute in question fall[s] within the scope of that arbitration agreement." *Id*.; *Houser*, 469 Fed.App'x at 315.  There is no question that the present action falls within the scope of the ADR Agreement. *See* Doc. #23-1 ("This Agreement applies to any and all disputes arising out of or in any way relating to … the Resident's stay at the Facility…."). Accordingly, this Court must decide whether the ADR Agreement represents a valid agreement to arbitrate the claims. *Sherer*, 548 F.3d at 381. To this end, the parties assert, and this Court agrees, that the validity of the ADR Agreement must be analyzed under Mississippi law. *See Cook, LLC*, 786 F.Supp.2d at 1169 (analyzing Defendants' arbitration agreement under Mississippi law).

Plaintiff brings negligence claims and wrongful death claims arising from Defendants' treatment of Ida Roberson.  Doc. #2 at ¶ 17.  Insofar as both classes of claims depend on vindication of Ida Roberson's rights, the agreement to arbitrate will only be considered valid if it

---

[2] Strangely, while the affidavit avers that Ms. Roberson was on the telephone, it also recites that she "produced State I.[D.]"  Doc. #24-4.

would have been enforceable against Roberson herself. *See Cleveland v. Mann*, 942 So.2d 108, 118–19 (Miss. 2007) ("Since [wrongful death] beneficiaries may only bring claims the decedent could have brought had the decedent survived, logic requires us to conclude that the converse is true, that is, the decedents may NOT bring claims the decedent could not have brought, had the decedent survived."); *see also Trinity Mission of Clinton, LLC v. Barber*, 988 So.2d 910, 919 (Miss. Ct. App. 2007) ("We find … that because the arbitration provision could be enforced against Ms. Barber, it may be equally enforced against her wrongful death beneficiaries.").

Defendants offer two arguments for why the ADR Agreement is binding on Ms. Roberson. Doc. #14. First, Defendants claim that Plaintiff acted as Ms. Roberson's agent when she signed the ADR and Admission Agreements, and that such agreements were binding on Ms. Roberson as Plaintiff's principal. *Id*. at 9. Alternatively, Defendants submit that the ADR Agreement was binding on Ms. Roberson because she was a third-party beneficiary to the agreement. *Id*. at 9–10.

**A. Agency**

"Generally, an agent cannot bind the principal to a contract unless the principal clothes the agent with authority, whether actual or apparent." *Northlake Dev. L.L.C. v. BankPlus*, 60 So.3d 792, 795–96 (Miss. 2011). "The burden of proving an agency relationship is upon the party asserting it." *Booker ex rel. Certain Underwriters at Lloyd's of London v. Pettey*, 770 So.2d 39, 45 (Miss. 2000). Similarly, the party asserting the agency relationship bears the burden of proving that the allegedly authorized act fell within the scope of the agent's authority. *American Nat. Ins. Co. v. Walters*, 93 So.2d 616, 630 (Miss. 1957).

### 1. Apparent Authority

To establish apparent authority, a party must show "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Hutton v. American Gen. Life & Acc. Ins. Co.*, 909 So.2d 87, 94 (Miss. Ct. App. 2005); *see also First Specialty Ins. Corp. v. U.S. Aquaculture Licensing*, No. 1:07-cv-98, 2008 WL 5191668, at *8 (N.D. Miss. Dec. 10, 2008) (citing *Hutton*).

Here, the only conduct of Ms. Roberson referenced by Defendants is the purported statement made by Ms. Roberson to the notary that she wished to designate Plaintiff as having power of attorney. Even assuming such a statement could rise to the level of granting apparent authority to execute an arbitration agreement, there is no evidence of reasonable reliance or a detrimental change in position as a result of such reliance. Accordingly, Plaintiff did not have apparent authority to execute the ADR Agreement on behalf of Ms. Roberson. *See Compere's Nursing Home, Inc. v. Estate of Farish ex rel. Lewis*, 982 So.2d 382, 384 (Miss. 2008) ("In evaluating a party's claim that an agent's apparent authority binds the principal, we must determine whether the party detrimentally relied on acts or conduct of the principal.").

### 2. Actual Authority

Even in the absence of reliance, Ms. Roberson may still be bound by the ADR Agreement if she gave Plaintiff authority to sign on her behalf. *Ford v. Lamar Life Ins. Co.*, 513 So.2d 880, 888 (Miss. 1987). In this regard, Defendants argue that Ms. Roberson's statement that she wanted to create a power of attorney in Plaintiff "show[s] an overt act by Ms. Roberson to grant agency authority in favor of the Plaintiff, and that it was her intent and desire to do so." Doc. #24 at 4.

"A designated power of attorney is nothing more than one form of a principal-agency relationship." *Clark v. Richey*, 759 So.2d 516, 518 (Miss. Ct. App. 2000). "Generally speaking, [Mississippi] law regards as valid and enforceable as a power of attorney any written instrument signed by the principal and 'expressing plainly the authority conferred.'" *Miss. Care Ctr. Of Greenville, LLC v. Hinyub*, 975 So.2d 211, 216 (Miss. 2008).

Defendants do not assert that the document notarized by Ms. Rodgers, which lacked Ms. Roberson's signature, created an actual power of attorney. Doc. #24 at 4. Rather, Defendants urge this Court to hold Ms. Roberson's statement that she wanted to create a power of attorney in Plaintiff operated to give Plaintiff "agency authority." *Id*.

Without deciding the broader question of whether a failed attempt to create a power of attorney may nonetheless create a more limited agency relationship, this Court concludes that the facts of this case do not warrant application of such a doctrine. Ms. Rodgers' affidavit makes clear that Ms. Roberson intended to confer a broad power of attorney. Doc. #24-5. There is no indication that Ms. Roberson enumerated more specific powers she wished Plaintiff to obtain or whether such powers included the right to execute the ADR Agreement. In the absence of such evidence, Defendants' actual authority argument must be rejected. *Walters*, 93 So.2d at 630. To hold otherwise would eviscerate Mississippi's requirement that a power of attorney be in writing and signed.

### B. Third-Party Beneficiary

Defendants contend that even if Ms. Roberson was not a party to the ADR Agreement, she was bound by its provisions as a third-party beneficiary. Doc. #14 at 9.

"[N]on signatories may be bound by an arbitration agreement if they are determined to be a third-party beneficiary." *Forest Hill Nursing Ctr. Inc. v. McFarlan*, 995 So.2d 775, 783 (Miss.

7

Ct. App. 2008). However, "[f]or a third-party beneficiary to exist, a valid contract must first exist." *GGNSC Batesville, LLC v. Johnson*, 109 So.3d 562, 565 (Miss. 2013).

For a valid contract to exist there must be: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) *parties with legal capacity to make a contract,* (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Johnson*, 109 So.3d at 565 (emphasis in original) (internal punctuation and citations omitted). In *Johnson*, the Mississippi Supreme Court considered a third-party beneficiary argument where the sister of a nursing home resident signed an arbitration agreement without authority to do so. *Id.* at 565. In rejecting third-party beneficiary enforcement, the *Johnson* Court held that where a person signs only as another's legal representative but lacks authority to do so, the contractual legal capacity requirement cannot be met, and there can be no valid contract. *Id*. at 565–66.

Here, Plaintiff signed the ADR Agreement only as Ms. Roberson's "Agent." Doc. #23-1 at 5. Because Plaintiff lacked authority to sign on Ms. Roberson's behalf, the ADR Agreement is not a valid contract, and may not be enforced under a third-party beneficiary theory.[3] *Johnson*, 109 So.3d at 565–66.

## IV.
## Motion for Reconsideration

Finally, Defendants seek reconsideration of this Court's previous ruling denying their motion for arbitration-related discovery. Doc. #30. In their motion, Defendants argue that reconsideration is justified because the "position taken by the Plaintiff [in response to the motion to dismiss] is in stark contrast to the written representations she made as part of the nursing home admission process." Doc. #30 at 1. Accordingly, Defendants seek:

---

[3] Defendants cite numerous cases from this District which reached an alternative conclusion. Doc. #14 at 9 & n.6. However, all but one of the cited cases pre-date *Johnson.* The lone opinion issued after *Johnson*, *Myers v. GGNSC Holdings, LLC*, No. 2:11-cv-133, 2013 WL 1913557 (N.D. Miss. May 8, 2013), did not address the *Johnson* opinion.

8

> leave to conduct arbitration related discovery to be completed within sixty (60) days from the date of an order granting said motion and that they be permitted to file any additional rebuttal brief within ten (10) days of the conclusion of arbitration related discovery. Specifically, Defendants request that they be allowed to depose Ms. Cotton solely on arbitration related issues, that they be permitted to propound no more than 10 interrogatories, 10 requests for production and 10 requests for admission to Plaintiff on arbitration related issues, and that they be permitted to subpoena and obtain other third party records bearing on the authority issue, such as banking records, hospital financial records, real property records, social security records, and Medicare/Medicaid records, all of which could easily demonstrate Ms. Cotton's authority to act.

*Id.* at 2.

"[C]ourts have generally denied arbitration related-discovery absent a compelling showing that such discovery is required." *Bell v. Koch Foods of Mississippi, LLC*, No. 3:08-cv-697, 2009 WL 1259054, at *3 (S.D. Miss. May 5, 2009). Here, Defendants seek a broad swath of discovery in the attempt to "demonstrate Ms. Cotton's authority to act." Doc. #30 at 2. However, as explained above, the dispositive issue in this case is not whether Plaintiff had some type of authority with regard to her mother's affairs; the question is whether Plaintiff possessed the specific authority to execute the ADR Agreement on her mother's behalf. To this end, Defendants have offered nothing but conclusory assertions regarding the potential relevance of the requested evidence to the ultimate question. In essence, Defendants are seeking broad discovery based on nothing more than the possibility of discovering relevant evidence. This is impermissible. *See Hawkins v. Wells Fargo Bank, N.A.*, No. 1:07-cv-399, 2008 WL 607155, at *1 (S.D. Miss. Feb. 29, 2008) (denying arbitration-related discovery where proponent lacked "even … a good faith belief that the proposed discovery is anything more than a fishing expedition").

Although Defendant has failed to offer a compelling showing that the entirety of the requested discovery is required, the Court concludes that a deposition of Plaintiff is permissible

to answer questions regarding her authority. Accordingly, Defendant's motion for reconsideration is granted in part. Defendants will be granted thirty days from the date of this order to depose Plaintiff on the issue of her authority to sign the ADR Agreement and, if the discovered facts warrant, to renew their motion to compel arbitration.

## V.
## Conclusion

For the reasons set forth above, the undersigned concludes: (1) that Plaintiff lacked authority to sign the ADR Agreement on behalf of her mother, and (2) that the ADR Agreement is unenforceable under a third-party beneficiary theory. Accordingly, Defendant's Motion to Dismiss Proceeding and to Compel Arbitration, Doc. #13, must be **DENIED.** Additionally, Defendants' Motion for Reconsideration, Doc. #30, is **GRANTED in part**. Defendants shall have thirty days from the filing of this order to depose Plaintiff on the issue of her authority to sign the ADR Agreement on behalf of her mother.

SO ORDERED, this the 23rd day of July, 2014.

/s/ **Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**