IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SHIRLEY COTTON, as Administratrix of**                                             **PLAINTIFF**
**the Estate of Ida Roberson (deceased), and**
**on behalf of her heirs and wrongful death**
**beneficiaries**

**V.**                                                          **NO. 3:13-CV-00169-DMB-SAA**

**GGNSC BATESVILLE, LLC, d/b/a**
**Golden Living Center Batesville; GGNSC**
**ADMINISTRATIVE SERVICES, LLC;**
**GOLDEN LIVING; and GOLDEN**
**LIVING-CENTER**                                                                 **DEFENDANTS**

**ORDER DENYING MOTION TO DISMISS AND COMPEL ARBITRATION**

This wrongful death action is brought by Plaintiff Shirley Cotton on behalf of the Estate of her mother Ida Roberson, and her mother's heirs, against Defendants GGNSC Batesville, LLC, and GGNSC Administrative Services, LLC. Doc. #2. Plaintiff alleges that Roberson died as a result of negligent care administered at Golden Living Center Batesville, a nursing home run by Defendants. *Id*. Before the Court is Defendants' renewed motion to dismiss and to compel arbitration. Doc. #36.

**I**
**Procedural History**

On May 22, 2013, Plaintiff filed a "Complaint for Medical Malpractice and Common Law Negligence" in the Circuit Court of Panola County, Mississippi. Doc. #2. On July 2, 2013, Defendants removed the action to this Court. Doc. #1. Approximately two weeks later, on July 18, 2013, Defendants filed a motion to dismiss the proceeding and to compel arbitration. Doc. #13.

On July 23, 2014, this Court issued an order denying the motion to dismiss and compel arbitration. Doc. #31. In its order, the Court granted Defendants leave to conduct limited arbitration-related discovery, and "if the discovered facts warrant, to renew their motion to compel arbitration." *Id.* at 10.

On August 19, 2014, Defendants filed a renewed motion to dismiss and to compel arbitration. Doc. #36. Plaintiff responded and Defendants replied within the time allowed. Doc. #38; Doc. #41.

**II**
**Standard**

Defendants have moved to dismiss this matter and to compel arbitration based on an arbitration agreement executed by Plaintiff, purportedly on behalf of her mother. Doc. #36. "A two-step analysis is applied to determine whether a party may be compelled to arbitrate. First, [the court] ask[s] if the party agreed to arbitrate the dispute. If so, [the court] then ask[s] if any federal statute or policy renders the claims nonarbitratable." *Sherer v. Green Tree Servicing*, LLC, 548 F.3d 379, 381 (5th Cir. 2008) (internal citations omitted). Here, neither party argues that arbitration is barred by a federal statute or policy. Accordingly, resolution of Defendants' renewed motion hinges on whether the parties agreed to arbitrate the dispute. *Id.*

In order to determine whether parties agreed to arbitrate a dispute, the court must answer two questions: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." *Sherer*, 548 F.3d at 381. These questions, in turn, are answered by applying relevant state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter … courts generally … should apply ordinary state-law principles that govern the formation of contracts."); *see also Cook v. GGNSC Ripley, LLC*, 786 F.Supp.2d 1166, 1169

(N.D. Miss. 2011) (citing *Kaplan*, 514 U.S. at 943). The required elements must be proven by a preponderance of the evidence by the party seeking to compel arbitration. *Grant v. House*r, 469 Fed. App'x 310, 315 (5th Cir. 2012) (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 156 Fed. App'x 710, 712 (5th Cir. 2005)).

## III
## Evidentiary Record

From approximately October 2010 until April 2011, Ida Roberson lived in a home in Sledge, Mississippi, with her son Raymond. Doc. #36-1 at 9. During this time, Roberson was in "good" physical and mental condition, and was of sound mind. *Id*. at 10.

In February 2011, three of Roberson's family members, including Raymond, "had cancer and [were] passing away." Doc. #36-1 at 14–15. Due to these illnesses, Roberson "felt she needed a little protection." *Id*. at 14. Specifically, with Raymond sick, Roberson told Plaintiff that "[i]f I need y'all to go do something for me, then I need you to do it because I'm going to be with him." *Id*. at 15. Based on this assertion, Plaintiff believed that Roberson wanted a document which "would allow [her] to go handle things for [Roberson] if she wasn't available to." *Id*.

Accordingly, Roberson, Plaintiff, and Annie Reed (Roberson's daughter and Plaintiff's sister) began the process of completing a "General Power of Attorney" form. *Id*. at 14–16. The document provided, in relevant part, "that Ida Roberson has made and appointed, and by these presents does make and appoint Shirley Cotton and Annie Reed true and lawful attorney for him/her …." Doc. #24-4. Although the form is type-written, the names Ida Roberson, Shirley Cotton, and Annie Reed, are hand-written. *Id*. Plaintiff testified that, she, Roberson, and Reed, each hand-wrote their own names. Doc. #36-1 at 15–16.

3

Under the purported grant of authority, the document states "**IN WITNESS WHEREOF**, I have hereunto set my hand and seal this 15 day of February, 2011." Doc. #24-4 (emphasis in original). Below the date, in a section captioned, "Signed, sealed and delivered in the presence of:", there are three empty signature lines. Two of the signature lines are identified as "Witness." *Id*. The third line bears no identification.

As explained in this Court's previous order, the form was notarized, albeit under suspicious circumstances. Doc. #31 at 4 n.2 ("Strangely, while [the notary's] affidavit avers that … Roberson was on the telephone, it also recites that she 'produced State I.D.'" (internal punctuation omitted)). The notarization states that "[t]he foregoing instrument was acknowledged by me this 15 day of February, 2011 by: Ida Roberson who … produced State Id. as identification and who did not take an oath." Doc. #24-4.

On or about April 12, 2011, Roberson suffered a stroke and was taken to Tri-Lakes Hospital in Batesville, Mississippi. Doc. #36-1 at 23. Following the stroke, Roberson "was still alert [and] still talking … just paralyzed … on the right side." *Id*.

While Roberson was still in the hospital, she received a visit from Jessica Harris Butler a representative of Golden Living Nursing Home. Doc. #36-1 at 20; Doc. #41-1 at ¶¶ 1, 3–4. During this visit, Plaintiff presented Butler with the "power of attorney" form and stated that she had authority to act on her mother's behalf. Doc. #36-1 at 20–21, 25. Plaintiff testified that, although Roberson was in the room and should have been able to hear the discussion, Roberson did not object to Plaintiff's statement that she had authority to act on her mother's behalf. *Id*. at 25.

During the meeting, Butler presented Plaintiff with a series of documents relating to admission to the nursing home. Doc. #36-1 at 27–28. Plaintiff signed numerous admission

documents on her mother's behalf because Butler made her "feel like if we didn't, they wouldn't admit her." *Id*. at 28. As explained in this Court's previous order, these documents included an:

> Alternative Dispute Resolution Agreement between "Golden Living Center" and Ida Roberson ("ADR Agreement") signed by Plaintiff as the "Agent" of her mother. The ADR Agreement provides that "[t]he parties agree that any disputes covered by this Agreement ('Covered Disputes') that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." The ADR Agreement defined "covered disputes" as "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law …." Pursuant to its terms, the ADR Agreement was "not a condition of admission to or continued residence in [Golden Living]."

Doc. #31 at 3 (internal citations omitted) (citing Doc. #23-1 at 5).

Butler, for her part, avers that Roberson was "just a few feet away" when Plaintiff made the representations of authority and then executed the documents ostensibly on her mother's behalf. Doc. #41-1 at ¶ 4. Butler has "no doubt that Ms. Roberson could hear our conversation and observe Ms. Cotton executing documents on her behalf." *Id*. According to Butler, "[at] no time did Ms. Roberson object or indicate in any way that Ms. Cotton in fact was not authorized to sign these documents." *Id*.

Butler signed the ADR Agreement on Golden Living's behalf in reliance "upon Ms. Cotton's representations that she had full authority to act on behalf of her mother …." Doc. #41-1 at ¶ 5. Similarly, Butler relied upon the "representations of authority, and Ms. Roberson's failure to object to or disagree with [the] same, in permitting Ms. Cotton to sign all other admission paperwork which allowed Ms. Roberson to be admitted to GGNSC Batesville, LLC." *Id*. at ¶ 6.

# IV
## Analysis

As it was with the first motion to dismiss,

5

the sole question to be decided is whether the parties agreed to arbitrate the dispute. *Sherer*, 548 F.3d at 381. In this regard, as the party seeking to enforce an arbitration agreement, Defendants must prove, by a preponderance of the evidence, that "(1) there [is] a valid agreement to arbitrate the claims and (2) … the dispute in question fall[s] within the scope of that arbitration agreement." *Id*.; *Houser*, 469 Fed.App'x at 315. There is no question that the present action falls within the scope of the ADR Agreement. *See* Doc. #23-1 ("This Agreement applies to any and all disputes arising out of or in any way relating to … the Resident's stay at the Facility…."). Accordingly, this Court must decide whether the ADR Agreement represents a valid agreement to arbitrate the claims. *Sherer*, 548 F.3d at 381. To this end, … the validity of the ADR Agreement must be analyzed under Mississippi law. *See Cook, LLC*, 786 F.Supp.2d at 1169 (analyzing Defendants' arbitration agreement under Mississippi law).

Doc. #31 at 4.

The validity of the ADR Agreement turns on whether the document would have been enforceable against Roberson herself. Doc. #31 at 4–5 (collecting authorities). In seeking to enforce the ADR Agreement, Defendant argues that: (1) Plaintiff was Roberson's agent; (2) Roberson is estopped from denying Plaintiff's authority to act; and (3) Roberson ratified Plaintiff's actions.[1] Doc. #37.

**A. Agency**

"Generally, an agent cannot bind the principal to a contract unless the principal clothes the agent with authority, whether actual or apparent." *Northlake Dev. L.L.C. v. BankPlus*, 60 So.3d 792, 795–96 (Miss. 2011). "The burden of proving an agency relationship is upon the party asserting it." *Booker ex rel. Certain Underwriters at Lloyd's of London v. Pettey*, 770

---

[1] In a single sentence contained within its section addressing apparent authority, Defendants argue that "the Arbitration Agreement [can] be enforced under the theory of intended third party beneficiary." Doc. #37 at 12. Defendants do not, however, cite any case law or offer any argument in support of this point. Accordingly, the Court deems this argument waived. *See U.S. v. Dominguez–Chavez*, 300 Fed. App'x 312, 313 (5th Cir. 2008) ("Dominguez has failed to adequately raise or develop his due process and equal protection arguments in his appellate brief, and, thus, they are waived."); *see also El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones."). Even if the argument had not been waived, it would be rejected because, as explained below, Defendants have not shown the existence of an enforceable contract. *See GGNSC Batesville, LLC v. Johnson*, 109 So.3d 562, 565 (Miss. 2013) ("For a third-party beneficiary to exist, a valid contract must first exist.").

6

So.2d 39, 45 (Miss. 2000). Thus, the party asserting the agency relationship bears the burden of proving that the allegedly authorized act fell within the scope of the agent's authority. *American Nat. Ins. Co. v. Walters*, 93 So.2d 616, 630 (Miss. 1957).

1. **Actual Authority**

"Real authority, which is also referred to as actual authority, may be expressed or implied." *Buie v. Mariner Health Care, Inc.*, No. 3:06-cv-499, 2006 WL 3858330, at *3 (S.D. Miss. Dec. 29, 2006) (citing *Bailey v. Worton*, 752 So.2d 470, 475 (Miss. Ct. App. 1999). "Actual authority … is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." Restatement (Third) Of Agency § 3.01 (2006).

In a recent opinion, U.S. District Judge Michael P. Mills addressed the contours of a person's actual authority to sign a nursing home arbitration agreement on behalf of a family member. *Gross v. GGNSC Southaven, LLC*, __ F.Supp.3d __, 2015 WL 424437, at *1–8 (N.D. Miss. Feb. 3, 2015). In *Gross,* Judge Mills observed that "Mississippi case law in this area very strongly suggests, if not definitively establishes, that a formal legal device transferring authority is required in order to confer actual authority to sign a nursing home arbitration agreement on behalf of another." *Id*. at *3. In reaching this conclusion, Judge Mills cited an array of Mississippi case law, but noted that the Mississippi Supreme Court decision in *Mississippi Care Center of Greenville, LLC v. Hinyub*, 975 So.2d 211 (Miss. 2008), "removes any doubt in this regard." 2015 WL 424437, at *6.

In *Hinyub*, the parties conceded on appeal that the nursing home resident had executed a power of attorney on behalf of her daughter, the signatory to an arbitration agreement. 975 So.2d at 217. However, because the document was not made a part of the appellate record, the

*Hinyub* court declined to consider it. *Id*. The *Hinyub* court next concluded that the daughter could not have signed the arbitration agreement as her mother's health care surrogate. *Id*. at 218. Having found that there was no evidence of a power of attorney and no evidence of health care surrogate action, *Hinyub* found no actual authority to sign the arbitration agreement. *Id*. *Gross* characterized this analytical structure as implicitly stating that informal grants of authority will not bind a principal to an arbitration agreement. 2015 WL 424437, at *6–7.

After reviewing *Hinyub*, Judge Mills wrote in *Gross*:

> This court can discern good reasons, unrelated to any hostility towards arbitration, as to why Mississippi appellate courts would require that individuals who wish to sign important documents on behalf of their relatives do so pursuant to formal legal devices such as a power of attorney. Clearly, there is a great potential for legal and personal controversies to arise among relatives when, for example, a son or daughter seeks to sign an important contract on behalf of an elderly parent. Some may feel that the signing of such a contract is not in their relative's best interests, while others may have more selfish concerns regarding the depletion of their relative's estate. Family disputes of this nature are hardly unusual, and formal legal devices serve to clarify exactly which relatives have authority to make important decisions, and it provides some accountability for them in doing so, such as through the imposition of heightened duties of care.

*Gross*, 2015 WL 424437, at *7.

The Court finds Judge Mills' analysis persuasive and holds that actual authority to sign a nursing home arbitration agreement may only be established through proof of a "formal legal device" such as a power of attorney, health care surrogacy, conservatorship, or guardianship.

Here, Defendants argue that "[t]he testimony of Ms. Cotton makes it clear that her mother expressly authorized her and her sister to act on her behalf, through verbal conversations and through an attempted effort to execute a power of attorney." Doc. #37 at 6. Defendants do not, however, argue that the authority existed pursuant to an enforceable formal legal device. Under these circumstances, the Court concludes that Defendants have failed to show that Plaintiff had actual authority to execute the ADR Agreement on behalf of her mother.

8

## 2. Apparent Authority and Estoppel[2]

"Apparent authority exists when a reasonably prudent person, having knowledge of the nature and the usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Eaton v. Porter*, 645 So.2d 1323, 1325 (Miss. 1994) (quoting *Ford v. Lamar Life Ins. Co.*, 513 So.2d 880, 888 (Miss. 1987)). "To recover under the theory of apparent authority, the following three factors must be present: (1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Mladineo v. Schmidt*, 52 So.3d 1154, 1167 (Miss. 2010). Even if Defendants could satisfy the first two prongs of the apparent authority inquiry, their motion would still be denied because there is no evidence of a detrimental change in position.

Mississippi's inclusion of a detrimental change element in its apparent authority inquiry is somewhat unusual insofar as it seems to conflate the doctrine of apparent authority with the doctrine of agency by estoppel. *See Hicks v. Harris*, 606 F.2d 65, 68 n.4 (5th Cir. 1979) ("Apparent authority differs from pure estoppel in that apparent authority does not require that the third party, who acted in reliance on the agent, have suffered injury in order to recover against the principal."); *see also Gen. Overseas Films, Ltd. v. Robin Intern., Inc.*, 542 F.Supp. 684, 688 n.2 (S.D.N.Y. 1982) ("Some formulations [of apparent authority] appear to provide that detrimental reliance on the principal's manifestations of assent to the agent's authority is not necessary to apparent authority and is more properly considered under the doctrine of estoppel. But some courts have held that detrimental reliance on the principal's conduct is essential to apparent authority as well.") (internal citations omitted). Nevertheless, state law is clear that a

---

[2] As explained below, the resolution of apparent authority also resolves the issue of estoppel.

detrimental change in position is necessary to establish apparent authority. *Schmidt*, 52 So.3d at 1167; *see also Adams Cmty. Care Ctr., LLC v. Reed*, 37 So.3d 1155, 1160 (Miss. 2010) (detrimental change required for apparent authority).

Within the framework of agency, a detrimental change of position "means an expenditure of money or labor, an inccurence of a loss, or subjection to legal liability, not the loss of the benefit of a bargain." Restatement (Third) Of Agency § 2.05 cmt. b;[3] *see also* Restatement (Second) of Agency § 8B cmt. e (1958) ("A person claiming liability by estoppel can recover only if he has so changed his position that he has suffered a loss, or would suffer a loss if he were to perform obligations undertaken with third persons. It is arguable that there is no change of position merely by entering into what is believed to be an executory contract with the principal.").

Here, Defendants argue that GGNSC "detrimentally changed its position in reliance on the apparent authority, as it too agreed to be bound to the arbitration process."[4] Doc. #37 at 12. In other words, Defendants seek to show a detrimental change of position through their execution of the ADR Agreement. Defendants do not argue, and have certainly not produced any evidence, that they changed their position in any way in expectation of resolving a dispute with Roberson through arbitration rather than through state or federal courts. In the absence of such evidence, the Court must conclude that Defendants cannot show detrimental reliance and,

---

[3] While this provision of the Restatement deals with agency by estoppel, the Mississippi Supreme Court has recognized that the apparent authority "rule is based upon the doctrine of estoppel." *Gulf Guar. Life Ins. Co. v. Middleton*, 361 So.2d 1377, 1383 (Miss. 1978).

[4] Although Defendants argue that GGNSC's acceptance of Roberson into the Golden Living facility was a form of reliance, they do not contend that the admission constituted a detrimental change in position. *See* Doc. #37 at 12. While not argued, it appears Defendants could not successfully argue a detrimental change in position based on their admission of Roberson since the ADR Agreement expressly states that it is "not a condition of admission to or continued residence in [Golden Living]." *See generally Ping v. Beverly Enters.*, 376 S.W.3d 581, 595 (Ky. 2012) ("[W]here, as here, the Arbitration Agreement was not a condition of admission, the nursing home has failed to show that its mistaken belief regarding Ms. Ping's authority resulted in the sort of detriment that would support an estoppel.") (citing Restatement (Third) Of Agency § 2.05 cmt b)).

therefore, cannot establish that Plaintiff acted with apparent authority.[5] *See Ping* 376 S.W.3d at 595 (agreement to arbitrate standing alone not a detrimental change in position); *see also Nation Motor Club, Inc. v. Stonebridge Cas. Ins. Co.*, No. 10-cv-81157, 2012 WL 10060179, at *7 (S.D. Fla. July 5, 2012) (in estoppel case, finding "Stonebridge has failed to establish that its reliance on NSD's statements caused a detrimental change in position, i.e.[,] whether Stonebridge took action other than what it would have done had it not believed that the new policy provided for arbitration.").

### B. Ratification

Mississippi "law allows a principal to ratify the agent's unauthorized acts and, upon doing so, become[] bound." *BankPlus*, 60 So.3d at 796. A principal "ratifies an act by (a) *manifesting assent* that the act shall affect the person's legal relations, or (b) conduct that justifies a *reasonable assumption* that the person so consents." *Id*. at 797 (emphasis in original, internal quotation marks omitted). "It is true that, under some circumstances, a principal's *inaction* can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act." *Id*. (citing Restatement (Third) of Agency § 401(2) cmt. f) (emphasis in original). To this end, "ratification requires … full knowledge of all the material facts." *Polles v. Fed. Deposit Ins. Corp.*, 749 F.Supp. 136, 140 (N.D. Miss. 1990); *Insurasource, Inc. v. Phoenix Ins. Co.*, 912 F.Supp.2d, 433, 441 (S.D. Miss. 2012) ("Under New Jersey law, ratification requires intent to ratify plus full knowledge of all the material facts." (internal quotation marks and punctuation omitted)).

---

[5] For the same reason, the Court concludes that Defendants cannot establish agency by estoppel. *See Christian Methodist Episcopal Church v. S & S Const. Co., Inc.*, 615 So.2d 568, 571 (Miss. 1993) ("The party asserting equitable estoppel must show that he has changed his position to his detriment in reliance upon the conduct of another."); *see also Gen. Prods. Co., Inc. v. Bezzini*, 365 A.2d 843, 846 (Conn. Ct. App. 1976) ("[S]ince apparent authority rests upon the estoppel principle, the fact that the plaintiff suffered no detriment in relying upon the power of attorney would preclude a recovery based upon that theory.").

Here, while there is no doubt that Roberson saw Plaintiff signing documents on her behalf, there is absolutely no indication that she was aware that Plaintiff signed an agreement binding her to arbitrate. Put differently, there is no evidence that Roberson's inaction occurred with full knowledge of all the material facts. In the absence of such evidence, the Court cannot reasonably assume that Roberson ratified Plaintiff's signing of the ADR Agreement. *See Gray v. Great Am. Reserve Ins. Co.*, 495 So.2d 602, 607 (Ala. 1986) ("An alleged principal cannot ratify an agreement which has not been brought to his knowledge."); *see also Morr v. Crouch*, 249 N.E.2d 780, 784 (Ohio 1969) ("Negligence or inaction are insufficient in themselves to show ratification of an agent's unauthorized act, but ratification must follow knowledge of the facts.").

## V
## Conclusion

For the reasons above, the Court concludes that: (1) Plaintiff did not have actual or apparent authority to bind her mother to the ADR Agreement; and (2) neither estoppel nor ratification can validate the ADR Agreement. Accordingly, Defendants' renewed motion to dismiss and compel arbitration [36] is **DENIED**.

SO ORDERED, this 24th day of March, 2015.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**